CRIMINAL MINUTES – GENERAL       'O'

| Case No. | CR 17-00535-CAS - 2 | Date | January 29, 2019 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Lucy Jennings |
| | | Ian Yanniello |
| *Deputy Clerk* | *Court Reporter / Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| CECILIA PEREZ | NOT | | X | JOHN MCNICHOLAS | NOT | | X |

**Proceedings:** (IN CHAMBERS) - GOVERNMENT'S MOTION IN LIMINE TO ADMIT STATEMENTS BY DEFENDANT'S CO-CONSPIRATORS (Dkt. 66, filed January 18, 2019)

GOVERNMENT'S MOTION IN LIMINE TO ADMIT EXCERPTS OF RECORDED INTERVIEW (Dkt. 67, filed January 19, 2019)

DEFENDANT'S MOTION TO SUPPRESS STATEMENTS (Dkt. 71, filed January 22, 2019)

## I.    INTRODUCTION & BACKGROUND

On August 25, 2017, the government filed an indictment charging co-defendants Nancy Soe and Cecilia Perez with: (1) conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(a)(2); (2) use and trafficking of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2); and (3) aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Dkt. 1.

On May 14, 2018, the government filed a plea agreement for Soe wherein she pleaded guilty to all counts of the indictment. Dkt. 40 ("Soe Plea"). The factual basis of the plea agreement provides that Soe and Perez "obtained personal identifying information from third parties, including names, social security numbers, and addresses, and used that information to open credit accounts at Kay Jewelers, [Soe and Perez's] place of employment," and that "[Soe],

along with co-defendant Perez, then used the fraudulent credit accounts to facilitate unauthorized purchases." Id. at 7–8.

On January 19, 2019, the government filed a motion in limine to admit statements by Perez's co-conspirators.  Dkt. 66.  The next day, the government filed a second motion in limine to admit clips of Perez's audio-recorded interview from November 1, 2017, and to exclude defendant's exculpatory statements from the same interview.  Dkt. 67.  On January 22, 2019, Perez filed oppositions to the government's motions in limine.  Dkts. 73, 75.

On January 22, 2019, Perez filed a motion to suppress her statements made during the November 1, 2017 interview.  Dkt. 71 ("MTS").  The government filed an opposition on January 23, 2019.  Dkt. 79.  The Court held a status conference regarding the parties' motions on January 24, 2019.

### III.    PEREZ'S MOTION TO SUPPRESS EVIDENCE

A defendant's waiver of her Miranda rights is valid if it is voluntary, knowing, and intelligent.  Miranda v. Arizona, 384 U.S. 436, 444 (1966). "Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of [the] defendant." United States v. Doe, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc) (internal quotation marks and citations omitted).  On November 1, 2017, Perez participated in an interview with postal inspectors wherein she discussed her involvement in the alleged conspiracy.  Dkt. 71-4 ("Interview").  Perez moves to suppress the statements she made during this interview on the basis that those statements "were the product of a custodial interrogation which was not preceded by a knowing and voluntary waiver of her [Miranda rights], and that any statements made during such interrogation were involuntary . . ." MTS at 2.  She argues that, despite having been informed of her Miranda rights at the beginning of the interview, she did not verbally acknowledge or waive those rights.  Id. at 1.  Perez further argues that her considerable pain as a result of a recent knee surgery and the consumption of Oxycodone prevented her from understanding her rights or knowingly and intelligently waiving those rights.  Id. at 1.

The government responds that Perez was not in custody when she was interviewed and thus a Miranda waiver was unnecessary, but that in any event, Perez was read her Miranda rights before the interview began and acknowledged that she understood them by nodding her head.  Dkt. 79 at 7.  The government also notes that Perez told the postal inspectors multiple times before and during the interview that she wanted to cooperate with them.  Id. at 6.

For the purpose of deciding this motion, the Court assumes, without finding, that Perez was in custody during the interview.  The Court denies Perez's motion to suppress for the following reasons.  First, Perez has not provided any authority requiring law enforcement to obtain an explicit, verbal waiver of Miranda rights to establish waiver.  Rather, the Supreme

Court has held "[w]here the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Berghuis v. Thompkins, 560 U.S. 370, 384 (2010). See also United States v. Rodriguez-Preciado, 399 F.3d 1118, 1127 (9th Cir. 2005) ("Waivers of Miranda rights need not be explicit; a suspect may impliedly waive the rights by answering an officer's questions after receiving Miranda warnings."). Here, Perez proceeded to answer the postal inspectors' questions after she was informed of her Miranda rights. Regardless of whether she nodded her head after she was asked whether she understood her rights, her uncoerced statements following the Miranda admonishments establish an implied waiver of her right to remain silent.

Second, even if it is true that Perez was experiencing pain and was under the influence of medication during the interview. the Court sees no reason to find that she did not knowingly and intelligently waive her rights during the interview. The Court has reviewed the transcript and the audio-recording of the interview and finds that Perez was coherent and responsive during questioning. See Shackleford v. Hubbard, 234 F.3d 1072, 1080 (9th Cir. 2000) ("The fact that a suspect is under the influence of drugs or medication is irrelevant if the suspect's statement was the product of a rational intellect and a free will."); cf. Mincey v. Arizona, 437 U.S. 385, 398–401 (1978) (interrogation not voluntary where defendant was in great pain in the intensive care unit of the hospital, repeatedly asked to be left alone, lost consciousness multiple times, and gave answers that were not "entirely coherent").

For the foregoing reasons, the Court **DENIES** Perez's motion to suppress her statements during the November 1, 2017 interview.

## III.   MOTION IN LIMINE TO ADMIT EXCERPTS OF THE INTERVIEW

The government also moves to admit certain inculpatory statements from Perez's interview because they are not hearsay but rather party admissions admissible under Federal Rule of Evidence 801(d)(2)(A), and to exclude Perez's exculpatory statements from the same interview as inadmissible hearsay. Dkt. 67. Perez responds that the entire interview should be suppressed for the reasons stated in her motion in suppress, but that if the Court were to decline her motion to suppress, the entire interview should be played to provide context for her statements pursuant to Federal Rule of Evidence 106's rule of completeness.

Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. However, Rule 106's "'principle of completeness' . . . does not allow the admission of otherwise inadmissible statements." United States v. Sine, 493 F.3d 1021, 1037 n.17 (9th Cir. 2007) (citing United States v. Collicott, 92 F.3d 973, 983 (9th Cir.1996)) ("Because [the witness's] out-of-court statements . . . do not fall within an exception to the

hearsay rule, they are inadmissible, regardless of Rule 106.")); see also United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) ("Even if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay.") (citation omitted).

At the January 24, 2019 status conference, the Court indicated that it would allow the entire interview to be admitted pursuant to Rule 106, with the exception of Perez's exculpatory statements. The parties have since met and conferred and have reached an agreement as to which excepts of the interview shall be played at trial.

In accordance with the foregoing, the Court **GRANTS** the government's motion in limine to admit Perez's inculpatory statements and to exclude her exculpatory statements from the November 1, 2017 interview. The Court **GRANTS** in part Perez's request to play the entirety of the interview audio-recording at trial, with the exception of any exculpatory statements.

### III. MOTION IN LIMINE TO ADMIT STATEMENTS OF PEREZ'S CO-CONSPIRATORS

The government moves to admit text messages exchanged between Soe and an unindicted co-conspirator ("A.T.") who provided Soe with various victims' personal identifying information and made fraudulent purchases at Kay Jewelers after Soe opened credit accounts in the victims' names. Dkt. 66 at 3; Dkt. 66-1. In one of these text messages, Soe instructed A.T. to go to Perez to execute his fraudulent purchases. Dkt. 66-1 at 32. Federal Rule of Evidence 801(d)(2)(E) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." Id. Before a court may admit a statement of a co-conspirator, the following preliminary facts must be established by a preponderance of evidence: (1) there was a conspiracy, (2) the conspiracy involved the defendant and the declarant, and (3) the statement was made during the course of and in furtherance of the conspiracy. See Bourjaily v. United States, 483 U.S. 171, 175 (1987).

The government argues that these text messages are admissible under Rule 801(d)(2)(E) as a statement because the government will establish at trial that: (1) there was a conspiracy to use or traffic in authorized access devices; (2) Soe, Perez, and A.T. were participants in the conspiracy; and (3) the statements were made by these individuals during and in furtherance of this conspiracy. Id. at 3. Perez responds that these statements should not be admitted "unless and until the government proves by a preponderance of the evidence independent of the

statement itself that the statement was made during the course of and in furtherance of a conspiracy in which the defendant was a participant." Dkt. 75 at 2.[1]

Here, the government has provided sufficient evidence of Perez's membership in the conspiracy to use or traffic in unauthorized access devices. In her plea agreement, Soe admits that she and Perez conspired to use fraudulent credit accounts to facilitate unauthorized purchases, and specifically references the text messages between herself and A.T. as overt acts committed in furtherance of the conspiracy. Soe Plea at 7–8. The government represents that Soe is expected to testify to the same facts at trial. Moreover, Perez made statements during the November 1, 2017 interview with the postal inspectors indicating that Soe would send customers to her as part of this scheme and that Perez knew that these customers were making purchases using a false identity. Dkt. 67-1, Ex. C. Excerpts from this interview will be played at trial. This testimony, combined with the text messages that the government intends to introduce, establishes by a preponderance of the evidence that Perez was a member of a conspiracy, and that these text messages were made in the course of and in furtherance of that conspiracy.[2] Accordingly, the Court makes a preliminary finding that there is sufficient evidence to admit statements of Perez's co-conspirators.

In accordance with the foregoing, the Court **GRANTS** the government's motion in limine to admit statements of Perez's co-conspirators.

## V.    CONCLUSION

The Court **DENIES** defendant's motion to suppress evidence.

The Court **GRANTS** the government's motion in limine to admit Perez's inculpatory statements and to exclude her exculpatory statements from the November 1, 2017 interview. The Court **GRANTS** in part Perez's request to play the entirety of the interview audio-recording at trial, with the exception of any exculpatory statements.

---

[1] At the status conference, defense counsel indicated that he also wanted the Court to exclude text messages sent by other alleged co-conspirators. The government clarified that it had no intention of offering such messages into evidence.

[2] The government also references business records showing numerous transactions involving fraudulent credit accounts opened by Perez or Soe and corresponding sales from those accounts. However, the government does not provide either a citation to or a copy of these records. The Court invites the government to identify those documents.

The Court **GRANTS** the government's motion in limine to admit statements of Perez's co-conspirators.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |