UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**          'O'

| Case No. | 2:17-cr-535-CAS - 2 | Date | September 19, 2019 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Lucy Jennings, Not Present |
|---|---|---|
| | | Ian Yanniello, Not Present |
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| CECILIA PEREZ | NOT | | X | JOHN MCNICHOLAS | NOT | | X |

**Proceedings:** (IN CHAMBERS) - DEFENDANT CECILIA PEREZ'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL (Dkt. [ 125 ], filed July 9, 2019)

## I. INTRODUCTION & BACKGROUND

On August 25, 2017, a federal grand jury indicted defendants Nancy Soe ("Soe") and Cecilia Perez ("Perez"), charging them with: (1) conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); (2) use and trafficking of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2); and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Dkt. 1. The indictment alleges that Soe and Perez, employees of the Topanga branch of Kay Jewelers ("Kay"), participated in a conspiracy with others to use stolen personal identifying information belonging to third parties to open Kay credit accounts and to make unauthorized purchases using those accounts. Id. at 2.

On May 14, 2018, Soe entered into a plea agreement with the government wherein Soe pled guilty to each count of the indictment. Dkt. 40 ("Soe Plea"). The factual basis for the plea provides that Soe and Perez obtained "personal identifying information from third parties, including names, social security numbers, and addresses, and used that information to open credit accounts . . . [and] then used the fraudulent credit accounts to facilitate unauthorized purchases." Id. at 7–8.

Perez's trial began on January 29, 2019. Dkt. 86. At trial, the government introduced evidence including testimony and text messages from Perez's alleged co-conspirators, Kay's business records, and audio from Perez's recorded November 1, 2017 interview with United

States Postal Inspectors. Dkt. 118 ("Trial Tr. Vol. I"); Dkt. 119 ("Trial Tr. Vol. II"); Dkt. 120 ("Trial Tr. Vol. III"); Dkt. 121 ("Trial Tr. Vol. IV"). The government asserted that Soe and Perez participated in a scheme whereby they would knowingly sell merchandise to unindicted conspirators, bill these purchases to fraudulent Kay credit accounts that they created using stolen personal information, and then receive commissions related to these fraudulent transactions. Trial Tr. Vol. II at 10–15, 28–29, 88–89. The jury returned its verdict on February 1, 2019, finding Perez guilty on all counts.

On July 9, 2019, Perez filed the instant motion seeking a judgment of acquittal or, in the alternative, a new trial. Dkt. 125 ("Mot."). The government filed an opposition on August 5, 2019, dkt. 135 ("Opp."), and Perez filed her reply on August 26, 2019, dkt. 142 ("Reply").

The Court held a hearing on September 9, 2019. At the end of the hearing, the Court invited the parties to submit supplemental briefing regarding the proper basis for calculating whether 18 U.S.C. § 1029(a)(2)'s "anything of value" requirement was met for the purposes of Count Two. The government submitted its supplemental brief on September 14, 2019, dkt. 151 ("Gov. Supp."), and Perez submitted her supplemental brief on September 17, 2019, dkt. 152 ("Perez Supp.").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.  LEGAL STANDARDS

### A.  Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as a challenge to the sufficiency of the evidence. United States v. Ladum, 141 F.3d 1328, 1337 (9th Cir. 1998). When considering a motion for judgment of acquittal, the Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hursh, 217 F.3d. 761, 767 (9th Cir. 2000). This is a two-step process: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010). "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010). "[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201–02 (9th Cir. 2000).

### B. Motion for a New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." United States v. A. Lanoy Alston, D.M.D., P.C., 974 F.2d 1206, 1211 (9th Cir. 1992). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000). A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).

## III. DISCUSSION

Perez moves for a judgment of acquittal as to Counts One, Two, and Three because "even viewing the evidence in the light most favorable to the government, any rational juror could not find that Perez is guilty of these charges beyond a reasonable doubt." Mot. at 1. Alternatively, Perez seeks a new trial on the grounds that "the weight of the evidence in this case is clearly against the verdict as the Government failed to prove each element of every count beyond a reasonable doubt[.]" Id. The Court addresses each count in turn.

### A. Count One: Conspiracy to Commit Access Device Fraud

To prevail on Count One, conspiracy to commit access device fraud, the government is required to prove that: (1) there was an agreement between two or more persons to commit access device fraud; (2) Perez became a member of the conspiracy, knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act in furtherance of the conspiracy. Dkt. No 91, Court's Jury Instructions ("Court Instruction") No. 14. Perez concedes that the government carried its burden of proof, with respect to Count One, as to the first and third elements. Mot. at 3.

Perez instead attacks the sufficiency of the evidence as to the second element. She contends that "[t]he government focused on Exhibit 3, a chart with 25 instances where Perez was on duty and listed as opening a fraudulent applicant for credit . . . [and] as being [involved] in 42 sales to fraudulent purchasers." Mot. at 7. She asserts that "[t]he chart did not provide any evidence that showed [her] knowledge of a conspiracy or that [she] intended for the objects of the conspiracy to be fulfilled." Id. Perez further argues that, during her November 1, 2017 interview with Postal Inspectors, she "never stated she knew about fraud" and "never stated she was involved in a criminal conspiracy." Mot. at 8.

Viewing "all the evidence at trial in favor of the prosecution," as the Court must when construing a motion for judgment of acquittal based on insufficiency of the evidence, the Court

cannot say that "the evidence of innocence, or lack of evidence of guilt, is such that *all rational fact finders would have to conclude that the evidence of guilt fails* to establish every element of the crime beyond a reasonable doubt." Nevils, 598 F.3d at 1165 (emphasis added). To the contrary, there is sufficient evidence to support the jury's finding that Perez knowingly became a member of the conspiracy and intended to further it. For example, Soe testified that she and Perez knowingly opened, using stolen identities, fraudulent Kay credit accounts and "were doing these frauds together." Trial Tr. Vol. II at 26, 88–89. Postal Inspector Eula Toca reviewed Kay records and testified that of the forty-one Kay Jeweler credit accounts flagged for fraud, thirty-four were opened by Soe and Perez. Id. at 113. At trial, Perez herself did not dispute her name appeared on more Kay Jeweler credit card accounts and transactions deemed fraudulent than did the names of any of her fellow employees. Trial Tr. Vol. III at 140–41.

The jury also heard an audio recording of Perez's November 1, 2017 interview with Postal Inspectors. During the interview, Perez made statements from which a jury could rationally find that Perez knowingly participated in the conspiracy, including: that "Yeah, I knew" that some persons for whom she opened Kay credit accounts were using fraudulent identities to open these accounts; that Perez knew co-conspirators using fraudulent Kay credit accounts predominantly purchased gold merchandise; and responding "I'm not stupid" to questioning as to why Soe recruited Perez to join the conspiracy. Dkt. 125, Government Exhibit 2-A: Edited Perez Interview Transcript ("Perez Interview Tr.") at 10–12. When asked why she engaged in the fraudulent conduct, Perez stated that business at the Topanga "store was bad" and "I wanted the commission," further demonstrating her knowledge of the scheme. Id. at 15.

In response, Perez attacks the sufficiency of the evidence regarding her participation in the conspiracy. For example, Perez asserts that her statement "I'm not stupid," made during the November 1, 2017 interview, is "more reasonably construed as meaning, 'I would have to be stupid not to notice that N.S. was engaging in unscrupulous activities.'" Reply at 4. Perez also challenges Soe's trial testimony as "simply not reasonable" and "unbelievable[.]" Mot. at 5, 16.

The Court notes that, on a Rule 29(c) motion for a judgment of acquittal, it "is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." U.S.A. v. Fisher, No. 14-CR-00110-JLS, 2015 WL 13271596, at *1 (C.D. Cal. June 22, 2015) (citing United States v. Rojas, 554 F.2d 938, 943 (9th Cir. 1977)). Because a jury could rationally find that Perez joined a conspiracy to open fraudulent Kay credit accounts and bill purchases to those accounts in return for receiving commissions on these fraudulent purchases, Perez has failed to demonstrate that she is entitled to a judgment of acquittal with respect to Count One. The Court therefore **DENIES** Perez's motion for acquittal on this count.

Nor has Perez demonstrated that this is an "exceptional case[] in which the evidence preponderates heavily against the verdict." U.S.A. v. Singh, No. 2:14-CR-00648-CAS-9, 2018

WL 1662483, at *2 (C.D. Cal. Apr. 2, 2018) (citing Pimentel, 654 F.2d at 545). Accordingly, the Court also **DENIES** Perez's motion for a new trial as to Count One.

### B. Count Two: Use of Unauthorized Access Devices

In order for the jury to find Perez guilty of Count Two, use or trafficking in unauthorized access devices, the government is required to prove that: (1) Perez knowingly used or trafficked in unauthorized access devices; (2) that by using or trafficking in the unauthorized access devices, Perez obtained things of value together exceeding $1,000 in value; (3) that Perez acted with the intent to defraud; and (4) that Perez's conduct affected interstate commerce. Court Instruction No. 16. Perez contends that the evidence regarding the first three elements is insufficient to sustain her conviction on this count.[1]

#### i. Knowing Use of Unauthorized Access Devices

Perez first asserts that "[t]he government could not provide a single instance where Perez engaged in a transaction knowing that the customer was committing a fraud." Mot. at 10. When asked, during her November 1, 2017 interview with Postal Inspectors, whether Perez knew that some of the customers for whom she opened Kay credit accounts were not, in fact, the same persons reflected in the personal identifying information she used to open those accounts, Perez stated "Yeah, I knew."[2] Perez Interview Tr. at 12. At trial, Soe corroborated that Perez knowingly used unauthorized access devices. For example, in response to a question regarding whether she and Perez opened Kay Jewelers credit accounts using identities they knew to be stolen, Soe testified "Yes, we did." Trial Tr. Vol. II at 88–89. Soe further testified that Perez also participated in the scheme by completing transactions using Kay credit accounts that Perez knew to be fraudulent. Id. at 90. And Perez concedes that, viewing the evidence in the light most favorable to the government, "No other employee was listed as opening as many fraudulent accounts. No other employee participated in as many sales which proved to be fraudulent." Mot. at 9.

Taken together, there is sufficient evidence to support the jury's finding that Perez knowingly used or trafficked in unauthorized access devices by opening credit accounts and by completing transactions for customers Perez knew to be using fraudulent information.

---

[1] The parties stipulated at trial that "opening credit accounts at Kay Jewelers and selling merchandise from those accounts" affected interstate commerce. Trial. Tr. Vol. II at 136–37.

[2] At trial, Perez testified that she never opened a credit account or completed a transaction for an individual that she knew to be fraudulently using the identity of another. Trial Tr. Vol. III at 158, 165–67. However, a "trier of fact is not compelled to accept and believe the self serving stories of vitally interested defendants. Their evidence may not only be disbelieved, but from the totality of the circumstances, including the manner in which they testify, a contrary conclusion may be properly drawn." United States v. Cisneros, 448 F.2d 298, 305 (9th Cir. 1971).

Accordingly, the Court finds that neither a judgment of acquittal nor a new trial is warranted on these grounds.

### ii. Intent to Defraud

For the purposes of Count Two, the Court instructed the jury that "[a]n intent to defraud is an intent to deceive or cheat." Court Instruction No. 16. Perez contends that there is insufficient evidence to sustain her conviction on this count since "Soe's testimony was the only evidence of an intent to defraud[.]" Mot. at 10.

Perez's challenge based on the credibility of Soe's testimony is not a proper basis for a motion for judgment of acquittal. The Court notes that the United States Court of Appeals for the Seventh Circuit has rejected a defendant's challenge to a conviction for use of unauthorized access devices on similar grounds. See United States v. Harris, 791 F.3d 772, 779 (7th Cir. 2015). In that case, co-conspirators testified against the defendant regarding the defendant's participation in a scheme to commit credit card fraud. Harris, 791 F.3d at 779. The defendant challenged the sufficiency of the evidence in support of his use of unauthorized access devices conviction on the basis that "the evidence supporting the convictions stemmed from biased testimony and was therefore insufficient to support the convictions" because "the testifying codefendants were [defendant]'s family and friends, and they avoided jail time by testifying against [defendant]." Harris, 791 F.3d at 779. The Court rejected the defendant's challenge because "the jury was aware of the plea agreements signed by the co-defendants and defense counsel argued the bias of the testifying witnesses in his closing statement[.]" Id. Here, Soe, Perez's co-defendant, testified regarding Perez's knowledge of, and participation in, the scheme. See, e.g., Trial Tr. Vol. II at 26, 88–89. Perez's counsel raised Soe's purported bias, stemming from Soe's plea deal and desire to receive a lesser sentence, to the jury. Id. at 27–28. Here, as in Harris, "the jury elected to convict even when presented with these credibility issues, as it was free to do." 791 F.3d at 779.

### iii. Section 1029(a)(2)'s "Anything of Value" Requirement

Perez also challenges the jury's verdict as to Count Two on the grounds that "[t]he government never produced evidence that Cecilia Perez obtained things of value totaling $1,000 or more." Mot. at 10. In response, the government asserts it has satisfied the statute's monetary threshold requirement because it has put forth evidence of Perez's illicit gains in the forms of: commissions earned on thirty-five fraudulent transactions that Soe and Perez each participated in; profits realized from fraudulent sales to Perez's ex-husband who then sold the fraudulently obtained items to pawn shops; and increased commissions on legitimate sales due to Perez's reaching sales quotas based, in part, on fraudulent transactions. Opp. at 11–12, 12 n.7.

Section 1029(a)(2) subjects to fine or imprisonment "[w]hoever knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period[.]"

18 U.S.C. § 1029(a)(2). Following oral argument, the Court invited the parties to submit supplemental briefing regarding whether, in determining if the government has established that Perez "obtained things of value together exceeding $1,000 in value" as required to sustain Perez's conviction as to Count Two, the Court looks to the value of commissions obtained by Perez or instead to the value of items obtained by others involved in the conspiracy. Relying, in part, on United States v. Schwartz, 785 F.2d 673 (9th Cir. 1986), the government contends that, "in analyzing the $1,000 threshold in Count Two, . . . 'value' includes the items defendant obtained and sold to co-conspirators and the lines of credit that she accessed after opening fraudulent accounts." Gov. Supp. at 3. In Schwartz, the United States Court of Appeals for the Ninth Circuit held that "in the ordinary sense[,] *thing of value* is not limited in meaning to tangible things with an identifiable commercial price tag." 785 F.2d at 680 (emphasis in original). As Perez points out in response, however, the Court in Schwartz considered "thing of value" in the context of a different statute, 18 U.S.C. § 1954, which "prohibits the offer, acceptance, or solicitation of 'any fee, kickback, commission, gift, loan, money, or *thing of value*' because of or with intent to influence the actions or duties of union benefit plan trustees[.]" Schwartz, 785 F.2d at 679; Perez Opp. at 3.

With respect to 18 U.S.C. § 1029(a), the specific statute that forms the basis for Count Three, the United States Court of Appeals for the Fifth Circuit has held that "the fact that Congress chose to omit the restrictive examples of money, goods and services when it later enacted 18 U.S.C. § 1029(a), indicates that Congress intended a more expansive reading of 'anything of value' in 18 U.S.C. § 1029(a)." United States v. Picquet, 963 F.2d 54, 55 (5th Cir. 1992). In that case, the defendant was convicted of use of unauthorized access devices based on her use of stolen credit cards "to purchase approximately $1,016.81 worth of goods and services." Id. The government and the defendant stipulated that excluding sales taxes, the defendant's purported illicit purchases would not exceed $1,000. Id. Rejecting the defendant's argument that the government failed to satisfy the statute's monetary threshold, the Fifth Circuit analogized to the theft of government property statute, 18 U.S.C. § 641, under which "'a thing of value' need not have value to the person from whom it was stolen; *it must merely have value to someone*, including the thief who stole it." Id. (emphasis added) (citing United States v. Gordon, 638 F.2d 886, 889 (5th Cir. 1981)). Thus, the Fifth Circuit concluded that "[t]he sales taxes at issue in this case have *value to a number of persons and entities*" including the defendant, who was required to pay sales taxes; the bank that had to pay the cost of goods and services and associated taxes fraudulently purchased using the credit cards it issued; and taxing authorities. Picquet, 963 F.2d at 55 (emphasis added).

There is sufficient evidence to support the jury's finding that Perez obtained things which have "value to *someone*" exceeding $1,000. Picquet, 963 F. 2d at 55 (emphasis added). For example, there is evidence that Perez knowingly opened Kay credit accounts for persons that she knew to be using fraudulent identities. Perez Interview Tr. at 10–12. Some of these credit accounts were secured by credit lines which exceeded $1,000, and Perez used some of these

accounts to sell merchandise exceeding $1,000 to other co-conspirators. Gov. Supp. at 2. Moreover, and as agreed to by the parties, the Court instructed the jury that it could find Perez guilty of Count Two under a theory of co-conspirator liability. Court Instruction No. 18. The Court has already determined that substantial evidence supports the jury's verdict as to Count One, conspiracy to commit access device fraud. Moreover, the jury heard testimony that the scheme netted Perez's co-conspirators $295,336.09 worth in merchandise, warranties, and service plans. Trial Tr. Vol. II at 114. Accordingly, the government's showing that Perez's co-conspirators obtained things of value exceeding $1,000 is sufficient to satisfy Section 1029(a)'s monetary threshold requirement as to Perez. See United States v. Fonseca-Caro, 114 F.3d 906, 907 (9th Cir. 1997) ("a co-conspirator is vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy."); see also United States v. Akinkoye, 185 F.3d 192, 201 (4th Cir. 1999) (finding Section 1029(a)(2)'s monetary threshold requirement met as to defendant where court gave "aiding and abetting" instruction to jury and sufficient evidence existed that defendant aided and abetted principal in principal's obtaining things of value exceeding $1,000).

For these reasons, the Court **DENIES** Perez's motions for judgment of acquittal or, in the alternative, a new trial as to Count Two.

### C.   Count Three: Aggravated Identity Theft

To convict Perez of aggravated identity theft, the government is required to prove that: (1) Perez knowingly possessed or used, without legal authority, a means of identification of D.J.H.[3]; (2) Perez knew the means of identification belonged to a real person; and (3) Perez did so during and in relation to the offense of using or transferring unauthorized access devices. Court Instruction No. 19. Perez challenges the sufficiency of her conviction on Count Three on the bases that the government failed to prove either that Perez possessed or used D.J.H.'s identification, or that Perez knew that D.J.H. was a real person. Mot. at 15.

The government produced evidence at trial from which a jury could rationally find that Perez used D.J.H.'s personal identifying information on December 21, 2015. For example, Postal Inspector Toca reviewed Kay's records, such as Kay credit applications, sales receipts, and employee time sheets. Trial Tr. Vol. II at 107–08. Toca testified that a fraudulent purchase was made at Kay, using D.J.H.'s identity, at 9:23 p.m. on December 21, 2016. Id. at 126–27. Soe testified that she coordinated this fraudulent purchase with an unindicted co-conspirator, Anthony Thurn ("Thurn"), arranging for Thurn to come into the store and make a purchase using D.J.H.'s identity. Trial Tr. Vol. II at 17–23. Soe further testified, and text messages corroborate, Soe

---

[3]   The parties agreed that the government was required to prove that Perez committed aggravated identity theft as to a specific victim named in the indictment as D.J.H. Trial Tr. Vol. IV at 24.

communicated to Thurn at 8:11 p.m. on December 21, 2015, that "my girl there can do it" since Soe had already left work for the evening to care for her daughter.[4] Id. at 24; see also Dkt. 125-1, Government Exhibit 1 ("Gov. Exh. 1"). When Thurn indicated to Soe, at 9:10 p.m., that he was outside the store and ready to complete the transaction using D.J.H.'s identity, Soe responded that "[i]f they don't look Busy go up to Cecy[.]" Trial Tr. Vol. II at 24. Perez herself testified that she was working on December 21, 2015. Trial Vol. III at 98–99. The next morning, December 22, 2015, Soe texted Thurn to ask how the transaction made using D.J.H's information turned out, and Thurn responded "Thank you so much and it all went4 [sic] good…" Trial Tr. Vol. II at 24–25. Inspector Toca testified that Perez received commission on this sale.[5] Id. at 127. Taken together, sufficient evidence supports the jury's finding that Perez *used* D.J.H.'s personal identifying information on December 21, 2015, at the point of sale, by selling items to Thurn.

But mere *use* of a means of identification, without more, is insufficient to establish guilt under the aggravated identity theft statute. Instead, the government must also establish that Perez "*knowingly* transferr[ed], possess[ed], or use[d]" D.J.H.'s personal identifying information "*without lawful authority*[.]"[6] 18 U.S.C. § 1028A(a)(1). And the government was also required to further prove that Perez knew "the means of identification belonged to another real person," as opposed to a "fictional person[.]" United States v. Maciel-Alcala, 612 F.3d 1092, 1096 (9th Cir. 2010).

---

[4] Kay's employee time sheets for December 21, 2015, however, indicate that Soe left work that evening at 8:25 p.m., two minutes *after* the fraudulent transaction using D.J.H.'s identity was executed. Reply at 14; Dkt. 125-1, Government Exhibit 6 ("Gov. Exh. 6").

[5] Toca testified that two other employees, Soe and Deepak Somani, also received commissions based on the December 21, 2015 D.J.H. transaction. Trial Tr. Vol. II at 127. He appears to have testified that Perez was the salesperson that completed the transaction because the sales receipt lists Perez first among these other two employees. Id. Perez testified that when she completed a transaction but split the commission with other employees, she would normally list herself first. Trial Tr. Vol. III at 86.

[6] See Flores-Figueroa v. United States, 556 U.S. 646, 648 (2009) (noting that with respect to aggravated identity theft statute, "the Government reluctantly concedes that the offender likely must know that he is transferring, possessing, or using [] *something* without lawful authority.") (emphasis in original); see also Liparota v. United States, 471 U.S. 419, 421 n.1, 434 (1985) (holding that statute subjecting to imprisonment "*whoever knowingly uses* . . . coupons or authorization cards *in any manner not authorized*" requires proof that defendant "knew that his conduct was unauthorized or illegal.").

The government contends that it carried its burden on these scienter elements at trial. Opp. at 12. The government points to Soe's testimony and corroborating text messages that on the evening of December 21, 2015, Soe instructed Thurn to "go up to Cecy" to complete the fraudulent transaction using D.J.H.'s personal identifying information. Trial Tr. Vol. II at 24; Gov. Exh. 1. Soe testified that she instructed Thurn to seek out Cecy specifically because "she met [Thurn] before . . . and she knew because we were doing these frauds together[.]" Trial Tr. Vol. II at 26. When Thurn notified Soe that he was planning to arrive at the Kay store between 9:10 and 9:15 p.m. on December 21, 2015, Soe responded "Ok let me call them[.]" Gov. Exh. 1. Moreover, Cliff Bennett, a Kay investigator, testified: that prior to opening a Kay credit account for an applicant, employees were required to verify the applicant's identity using "some form of government ID or a second form of ID"; that employees then forwarded a completed credit account application to Kay's corporate office to verify that an applicant was a real person with acceptable credit; and that the corporate office would relay its decision on the application back to the employees, often within a matter of seconds. Trial Tr. Vol. I at 131–34. The government asserts that, taken together, these pieces of evidence are sufficient to support a finding that Perez knew Thurn was *not* D.J.H. because she had previously met Thurn, and that Perez knew D.J.H. was a real person because, as a Kay Jewelers employee, Perez knew that Kay Jewelers credit accounts could only be opened using identities belonging to real persons.[7] Opp. at 12–14.

Perez, in turn, contends that this evidence is insufficient to sustain her conviction as to Count Three. Perez points out that Soe testified at trial that Soe did not ultimately know whether Perez was the employee who assisted Thurn complete the December 21, 2015 transaction using D.J.H.'s identity. Trial Tr. Vol. II. at 62. Moreover, Perez testified that she had never seen Thurn before, Trial Tr. Vol. III at 113, and Soe testified that she, not Perez, processed the application for a Kay Jewelers credit account made using D.J.H.'s identity, Trial Tr. Vol. II at 50–53. As such, Perez contends there is insufficient evidence to support a finding that Perez knew "D.J.H. actually existed from prior dealings, and Thurn was clearly not D.J.H." Mot. at 16.

The jury heard evidence that Perez received a commission on the transaction fraudulently completed using D.J.H.'s identity; that Perez's name appeared first among other employees on this transaction; that Soe purposefully directed Thurn, using D.J.H.'s identity, to "go up to Cecy" because Perez had previously met Thurn; that Perez had personal experience opening Kay credit accounts; and that Perez was generally aware of Kay's corporate policies and procedures regarding verifying the credit scores and identities of Kay credit account applicants. Based on this evidence, the Court cannot say that "no rational trier of fact could find . . . beyond a reasonable doubt" that Perez used D.J.H.'s personal identifying information, knowing that Thurn was not

---

[7] The Court also observes that Perez testified that, over the course of her employment with Kay, she personally opened Kay credit accounts and had experience with Kay's policies and procedures regarding opening these accounts. Trial Tr. Vol. III at 75, 157–158.

D.J.H., and that Perez knew D.J.H. was a real person. Nevils, 598 F.3d at 1167. Accordingly, the Court **DENIES** Perez's motion for judgment of acquittal as to Count Three.

However, a "district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." Alston, 974 F.2d at 1211. Accordingly, "[i]f, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict [such] that a serious miscarriage of justice may have occurred, [the district court] may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." United States v. Johnson, No. 2:14-CR-00208-BRO, 2015 WL 13687731, at *3 (C.D. Cal. Dec. 15, 2015). Perez asserts that the government failed to prove that Perez "engaged in communication with either [Soe] or Thurn [regarding the December 21, 2015 transaction fraudulently made using D.J.H.'s identity], . . . that [Perez knew] D.J.H. actually existed from prior dealings, and [that Perez knew] Thurn was clearly not D.J.H."[8] Mot. at 14. The Court agrees. For example, although the text messages between Soe and Thurn indicate that Soe directed Thurn to "go up to Cecy," the text messages do not establish that *Perez knew* either that Soe had directed Thurn to approach Perez or that Thurn was not D.J.H. And, although Soe testified at trial that Perez had previously met Thurn, suggesting that Perez therefore necessarily knew Thurn was not D.J.H., on a motion for a new trial, the Court "may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." Alston, 974 F.2d at 1211.

The Court therefore concludes that although there is sufficient evidence to support the jury's verdict so as to require denial of Perez's motion for a judgment of acquittal as to Count Three, the *weight* of the evidence does not support the jury's verdict on this Count. Accordingly, a new trial is warranted as to Count Three. See United States v. Zucchet, No. 03-cr-2434-JM, 2005 WL 8160882, at *9 (S.D. Cal. Nov. 10, 2005) (denying motion for judgment of acquittal because "the record amply shows that [defendant] engaged in deceitful conduct" but granting motion for new trial because "the evidence sufficiently preponderated against the verdict[.]")

The government urges that the evidence supports the jury's verdict pursuant to the Court's "aiding and abetting" instruction to the jury. Opp. at 14 n.9. That is because, according to the government, Soe "committed aggravated identity theft by opening the fake account in D.J.H.'s name, and [Perez] aided and abetted the crime by executing the fraudulent transaction the following day." Id. To prevail as to Count Three with respect to a theory of aiding and abetting, the government is required to prove: (1) that someone else committed aggravated identity theft; (2) that Perez aided, counseled, commanded, induced or procured that person with respect to at least one element of aggravated identity theft; (3) that Perez acted with the intent to facilitate the

---

[8] The Court observes that Perez initially makes this argument in relation to her motion for a judgment of acquittal, but that, for the purposes of her motion for a new trial, "Perez echoes the arguments regarding Counts Two and Three." Mot. at 19.

offense of aggravated identity theft; and (4) that Perez acted before the crime was completed. Court Instruction No. 21. The Court notes that "[t]he evidence must show beyond a reasonable doubt that the defendant acted with knowledge and intention of helping that person commit the offense" and must "actively participate[] in a criminal venture with advance knowledge of the crime[.]" Id. The same deficiencies in proof regarding whether Perez directly committed aggravated identity theft also render unpersuasive the government's claim that the jury's verdict as to Count Three should be saved based on the Court's alternative "aiding and abetting" instruction. Indeed, the lack of evidence regarding whether Perez either knew about the arrangement between Thurn and Soe or knew that Thurn was not D.J.H. necessarily undermines any finding by the jury that Perez "acted with [the] knowledge and intention" of helping Soe commit aggravated identity theft with respect to D.J.H. specifically. Court Instruction No. 21.

For these reasons, the Court **GRANTS** Perez's motion for a new trial as to Count Three.

### D. Perez's Juror and Prosecutorial Misconduct Claims

#### i. Sleeping Juror Claims

Perez first asserts that the Court should order a new trial on juror misconduct grounds because one or more jurors were asleep during portions of the trial. Mot. at 21. Juror misconduct warrants a new trial where "the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir. 1974). The Ninth Circuit has held that "the presence of a sleeping juror during trial does not, per se, deprive a defendant of a fair trial." United States v. Olano, 62 F.3d 1180, 1189 (9th Cir. 1995).

Perez specifically contends that Juror No. 7 was asleep during the defense's cross-examination of Cliff Bennett, a Kay investigator, and during the defense's direct examination of Perez. Mot. at 21. Perez additionally contends, for the first time in reply, that an additional juror, Juror No. 6, was also asleep during trial on January 29, 2019. Reply at 14. In support of this contention, Perez offers the declaration of defense investigator Joel Wyenn, who was present during trial, as well as notes that Wyenn attests he took during the trial. Dkt. 142, Declaration of Joel S. Wyenn ("Wyenn Decl.") and Exhibit C ("Exh. C"). Through these items, Perez renews her claim that Juror No. 7 was asleep on January 29, 2019. Id.

"To prevail on a Rule 33 motion, the burden is on the defense to show the essential unfairness of the trial to the point where it would be a manifest injustice to let the verdict stand." United States v. Rodin, No. 03-CR-1499 (JSR), 2004 WL 1586415, at *1 (S.D.N.Y. July 15, 2004) (internal citations and punctuation marks omitted). Having reviewed transcripts from the trial, the Court finds that Perez has not met this burden. For example, on January 29, 2019, after excusing the jury, the Court noted, at sidebar, that "we had a little trouble with a juror falling asleep which is why we all decided to stretch." Trial Tr. Vol. I at 172–73. The Court reiterated, however, that "I'm not sure he was asleep . . . *I can't tell you he was asleep, I don't believe he*

*was*, but he looked like he was getting sleepy." Id. at 173 (emphasis added). On January 31, 2019, at sidebar, the government stated that "[w]e just wanted to note that Juror 7 has been asleep." Trial Tr. Vol. III at 92. The Court stated, "*I have been watching him* and *he appeared* to be moving around over there and *not asleep*." Id. at 92–93 (emphases added). Perez's counsel noted, at the time, "I don't know if he was asleep." Id. at 92. Moreover, the record contains no indication that Juror No. 7 was asleep.

Perez has not established that one or more jurors was actually asleep during any portion of her trial. Even assuming that one or more jurors were, in fact, asleep during portions of Perez's trial, Perez's unsupported assertion that "[b]ecause a juror slept, evidence which could have been favorable to Ms. Perez was never heard" is insufficient to establish the prejudice necessary to render her trial so fundamentally unfair as to warrant a new trial. See Reply at 15; United States v. McKeighan, 685 F.3d 956, 973 (10th Cir. 2012) ("juror misconduct, such as inattentiveness or sleeping, does not warrant a new trial absent a showing of prejudice—i.e., that the defendant did not receive a fair trial.").

Accordingly, the Court **DENIES** Perez's motion for a new trial on these grounds.

### ii. Post-Verdict Note from Jury Foreperson

Perez also contends that a new trial is necessary based on statements the jury foreperson made in a post-verdict note to the Court. Mot. at 22. Perez asserts that the letter "is loaded with statements indicating that improper verdicts were rendered." Reply at 7.

On February 2, 2019, the foreperson submitted a letter to the Court. Dkt. 125, Exhibit A ("S.D. Letter"). In it, the foreperson described evidence the Government put on, in the form of Kay's business records, as "overwhelming." Id. The foreperson also speculated that unindicted individuals, including Perez's husband, may have used "mental or physical abuse" to coerce defendant Perez into participating in the scheme. Id. The foreperson indicated that members of the jury "all were hoping [Perez] could get probation." Id. (emphasis in original).

"The prohibition on admitting juror testimony to challenge the validity of a verdict is longstanding." United States v. Leung, 796 F.3d 1032, 1033 (9th Cir. 2015). Indeed, Federal Rule of Evidence 606(b) generally bars the use of juror testimony, affidavits, or statements to probe the validity of a verdict, providing that:

> a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1).

The jury foreperson's note suggests that the jury may have violated the Court's instruction by considering possible punishments for Perez, including speculating that Perez "could get probation[.]" S.D. Letter. During oral argument, counsel for Perez conceded that Fed. R. Evid. 606(b)(2)(A), which allows for juror testimony regarding whether "extraneous prejudicial information was improperly brought to the jury's attention," likely presents the only basis pursuant to which the note *may* be admissible. The note, on its face however, appears to relate to the jury members' internal mental processes, specifically that jurors "all were hoping [Perez] could get probation," rather than raising the inference that the jury considered extraneous information.[9] S.D. Letter. As such, questioning the verdict based on the note's statement regarding probation as a possible sentence is the type of inquiry into the jury's internal deliberative processes that Rule 606(b) forbids. See U.S.A. v. Krug, No. CR 09-1148-GHK, 2013 WL 12205704, at *8 (C.D. Cal. Aug. 8, 2013) (denying motion for new trial where defendant contended that district court previously erred by failing to consider declarations from a juror since "such evidence is barred by FRE 606 because it concerns the juror's mental process and the effect of anything on that juror's vote.") (internal punctuation and citation omitted); see also Raley v. Ylst, 470 F.3d 792, 803 (9th Cir. 2006) ("Although the jury's discussion . . . clearly violated the trial court's instructions, what happened (or did not happen) in the courtroom was a part of the trial, not extrinsic to it. We may not inquire into a jury's deliberations concerning the evidence at trial.").

Accordingly, the Court **DENIES** Perez's motion for a new trial based on statements that the jury's foreperson made in a post-verdict note to the Court.

### iii.   The Government's Statement During Rebuttal Argument

Perez seeks a new trial on the basis that the government made material misrepresentations to the jury during rebuttal argument that the government knew were factually inaccurate. Mot. at 22–25. Perez asserts that these purported misrepresentations gave the jury "a totally false impression of what actually occurred" and that the resulting "prejudice to [Perez] was insurmountable." Mot. at 24–25.

The gravamen of Perez's challenge is that the government's statements during its rebuttal argument were based on an edited version of her interview with Postal Inspectors played for the jury. Mot. at 23. Perez asserts that the unedited recording of her interview contains her repeated

---

[9] Counsel for Perez also suggested, during the hearing, that to the extent the note is unclear or ambiguous, the Court should hold an evidentiary hearing to determine whether some external source or document served as the impetus for the jury's speculation that Perez could receive probation as a possible sentence. The Court notes that "[t]here is no presumption that the jury was exposed to extrinsic information. In fact, there is an opposite presumption that the jury performed its duties faithfully and diligently." United States v. Caro-Quintero, 769 F. Supp. 1564, 1574 (C.D. Cal. 1991). Accordingly, the Court declines to order an evidentiary hearing.

denials of involvement in the scheme.[10]  Id.  In contrast, during its rebuttal to Perez's closing argument, the government argued that, during Perez's November 1, 2017 interview with Postal Inspectors, Perez "never, not once denied her involvement in the scheme. . . . She admitted she knew about the fraud, and she talked about her role in the conspiracy and how she participated." Trial Tr. Vol. IV at 76.  Perez also challenges as misleading the government's statement during rebuttal argument that Perez "admitted she opened up more than ten fake credit accounts . . ." Id.  Instead, Perez contends that her statement during the interview that she "probably" opened more than ten, but less than one hundred fraudulent Kay Jewelers credit accounts does not amount to an admission.  Mot. at 25.

Even assuming that the government's representations on these points constituted inaccurate misrepresentations, Perez fails to establish any requisite prejudice that would warrant a new trial.  The Court notes that Perez's counsel objected to the government's argument, that the Court agreed to admonish the jury, and that the parties agreed that the Court should give a curative instruction to the jury.  Trial Tr. Vol. IV at 88–96.  The Court proceeded to instruct the jury that:

> During rebuttal argument when talking about defendant's interview on November 1st, 2017, government counsel said something to the effect of quote, 'During that interview not once did defendant deny her involvement in the scheme,' unquote.  *You are instructed to disregard that portion of counsel's argument*.
>
> Also, as I told you before, arguments – you are reminded that *arguments by the lawyers are not evidence*.  If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.  So that concludes my additional instruction and you may return to your deliberations.  Thank you.

Trial Tr. Vol. IV at 96 (emphases added).

The Court finds this curative instruction sufficient to eliminate any prejudice that may have resulted from the government's statements during closing argument.  See United States v. Lopez-Alvarez, 970 F.2d 583, 598 (9th Cir. 1992) (finding that "any prejudice which might have resulted from the [prosecutor's misleading] comments was neutralized by the trial judge when he instructed the jury that '*the lawyers' statements are not evidence.*'") (internal citation omitted) (emphasis added).  For these reasons, the Court **DENIES** Perez's motion for a new trial based on prosecutorial misconduct.

---

[10]　　The Court previously granted the government's motion in limine "to admit Perez's inculpatory statements and to exclude her exculpatory statements[.]" Dkt. 88 at 4.  The edited version of the audio tape played at trial reflected the parties' pre-trial "agreement as to which excerpts of the interview shall be played at trial." Id.

IV.   **CONCLUSION**

For the foregoing reasons, the Court **DENIES**, in part, and **GRANTS**, in part, Perez's motion for judgment of acquittal or, in the alternative, for a new trial. Specifically:

1) The Court **DENIES** Perez's motion for judgment of acquittal or, in the alternative, for a new trial with respect to Count One.

2) The Court **DENIES** Perez's motion for judgment of acquittal or, in the alternative, for a new trial with respect to Count Two.

3) The Court **DENIES** Perez's motion for judgment of acquittal with respect to Count Three.

4) The Court **DENIES** Perez's motion for a new trial based on juror misconduct as to Perez's juror and prosecutorial misconduct claims.

5) The Court **GRANTS** Perez's motion for a new trial as to Count Three.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |